IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTONIO M. BOGAN, (R29595),

    Petitioner,

v.

JACQUELYN LASHBROOK,
Warden

    Respondent.

Case No. 17 CV 7294

Judge Jorge L. Alonso

# MEMORANDUM OPINION AND ORDER

Following a bench trial in the Circuit Court of Will County, Petitioner Antonio M. Bogan was convicted in 2014 of being an armed habitual criminal (720 ILCS § 5/24-1.7(a)(1) (West 2012)), and of defacing the identification marks of a firearm (720 ILCS § 5/24-5(b) (West 2012)). [Dkt 15-3 at 2.] Bogan brings this *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254. [Dkt 1.] For the reasons stated below, the Court denies the petition and declines to issue a certificate of appealability.

## BACKGROUND

The following facts are taken from the state court record [dkt 15] and the Illinois Appellate Court's decision on direct appeal, *People v. Bogan*, 2017 Ill. App. (3d) 150156 [dkt 15-3].[1] The state court's factual findings are presumed to be correct for purposes of habeas review because

---

[1] Although Bogan notes in his reply that he did not receive a courtesy copy of the record Respondent filed with her Answer, he nevertheless is aware of them given that he accurately refers to them throughout his submission. [*See* dkt 17.]

Bogan neither disputes them nor presents clear and convincing evidence to rebut the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007); *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015).

The evidence at trial established that on July 27, 2013, Joliet police officer John Byrne received information to be on the lookout for Bogan, possibly driving a white Chevrolet Impala. [Dkt 15-3 at 2.] Officer Byrne testified that upon observing the Impala, he stopped the vehicle but Bogan was not one of the three people found inside. [*Id.* at 2.] Byrne then saw Bogan on the porch of an apartment complex next to where the vehicle stop was initiated. [*Id.* at 2.] Byrne observed a green Oldsmobile Cutlass parked in the same complex, and after learning that Bogan was the registered owner of the Cutlass, he watched the vehicle until a search warrant could be obtained. The State submitted evidence of the vehicle registration for the Cutlass showing that it was registered to Bogan with an address of 1911 Moore Street, Apartment No. 103. [*Id.* at 3.]

Officer Chris Delaney, an evidence technician for the Joliet Police Department, testified that he was directed to search the Cutlass parked at 1911 Moore Street. Delaney and Detective Jeffrey German conducted the search. [*Id.*] Delaney testified that they discovered the following items in its back seat: a .22-caliber Ruger handgun, a "black .40 caliber semi-automatic handgun Hi-Point," an "AR-15 style rifle," a black canvas bag containing five 30-round magazines for the rifle, a box of .32-caliber ammunition, and a box of .223-caliber ammunition for the rifle. [*Id.* at 2.] He testified that the rifle was found in its own bag, while the two handguns were found wrapped in a sweatshirt. [*Id.*] Delaney also found latent fingerprints on the box of rifle ammunition, which were submitted for examination. [*Id.*] Two were suitable for comparison. [*Id.*] Michael Murphy, an expert in the field of fingerprint examination, testified that one print from the box matched Bogan. [*Id.* at 3.] He did not testify as to the other. [*Id.*]

Detective German also testified at the trial. [*Id*. at 2-3.] According to German, when he first arrived at 1911 Moore Street, Bogan had been handcuffed in the back of a squad car, holding an iPhone. [*Id.* at 2.] German testified that he collected the iPhone for evidence. [*Id.*]

As to the search of the Cutlass, German testified that across the back seat was a black garment bag containing a rifle case with a rifle inside. [*Id*.at 3.] On the top of a pile of things found on the driver's side floor board, officers found a red plastic bag containing numerous items including a health insurance card bearing Bogan's name. [*Id.*] Under the bag was a black sweatshirt wrapped around two handguns: a .40-caliber semiautomatic, and a .22-caliber Ruger revolver. [*Id.*] German testified that the serial number on the .40-caliber semiautomatic handgun had been defaced. [*Id.*] He added that beneath the handguns was a zipped bag, containing five empty rifle magazines, and two boxes of ammunition. [*Id.*] Officers found a number of papers in the front seat of the Cutlass, including a March 3, 2013 towing receipt signed by Bogan for the vehicle, and a March 18, 2013 Walmart receipt bearing Bogan's name. [*Id.*] In addition, German testified, they found a crossbow and arrows in the trunk. [*Id.*]

German testified that he obtained Bogan's consent to search his apartment, and participated in the search. [*Id.* at 2-3.] The State submitted a form documenting Bogan's consent, and identifying his address as 1911 Moore Street, Apartment No. 103. [*Id.*] German testified that he entered Bogan's apartment using keys Bogan had provided. [*Id.* at 3.] In the apartment, German found a handmade cardboard target that contained five holes he believed had been made by arrows. [*Id.* at 2.] Although both Bogan and his apartment were searched, officers never found the keys to the Cutlass. [*Id.* at 3.]

Joliet Police Officer Chris Botzum testified as to the evidence extraction he performed on Bogan's phone. [*Id.*] Four photographs were extracted and submitted into evidence by the State.

[*Id.*] Two were pictures of the rifle found in the backseat of the Cutlass, dated July 15, 2013, and two were of Bogan, dated March 31, 2013 and June 22, 2013. [*Id.*] Following Botzum's testimony, the State submitted into evidence two certified convictions showing that Bogan had previously been convicted twice of armed robbery. [*Id.*]

Upon the conclusion of the State's case, Bogan testified that the Cutlass belonged to Anton Spencer, his close friend of approximately 25 years. [*Id.*] Bogan testified that Spencer had driven the Cutlass to Bogan's apartment, and that Spencer had left from there in Bogan's vehicle, the white Impala, with Bogan's mechanic Timothy Potter and Potter's girlfriend. [*Id.*] According to Bogan, they were taking the Impala to a garage to have its brakes replaced when the vehicle was stopped by police. [*Id.*] Bogan explained that although he purchased the Cutlass in his own name in March 2013, he did so with money belonging to Spencer and as a favor to him because neither Spencer nor his girlfriend Micah Smith had a valid driver's license. [*Id.*]

Bogan testified that he had not been in the Cutlass since March 2013. [*Id.*] As to his expired insurance card and other papers found in the Cutlass, Bogan surmised that they had gotten into the vehicle through Spencer who also had access to Bogan's apartment. [*Id.* at 3-4.] As to the other items, Bogan explained that Spencer had taken him to Walmart in the Cutlass once, and that Bogan had retrieved the vehicle for Spencer when it was impounded because the vehicle was registered in Bogan's name. [*Id.* at 4.] Bogan further testified that the AR-15 rifle belonged to Spencer, and that Spencer had both sent him pictures of it and brought it that day to show it to him. [*Id.*] He admitted that he had touched a box of ammunition, but he denied ever putting any weapons into the Cutlass. [*Id.*]

On cross-examination, Bogan denied originally telling German that he had bought the Cutlass from "Michael Smith." [*Id.*] He explained that he had actually said "Micah Smith," the

name of Spencer's girlfriend. [*Id.*] On rebuttal, German testified that Bogan had initially denied ever being in the Cutlass before, and that Bogan had claimed he had never even seen it. [*Id.*] According to German, it was only when Bogan was confronted with the registration in his own name that he said that he had previously owned the vehicle but that he had sold it two weeks prior to a "Mike Smith" for whom he had no contact information. [*Id.*] German testified that he was certain Bogan used the name Mike Smith not Micah, and that he used the pronoun "he" when referring to Smith. [*Id.*]

The Circuit Court found Bogan guilty of both charged offenses. [*Id.*] He was sentenced to 30 years' imprisonment for being an armed habitual criminal, and five years' imprisonment for defacing the identification marks of a firearm, with the time to run concurrently. [*Id.*] Thereafter, Bogan filed a direct appeal in which he argued that the evidence at trial was insufficient to support his conviction. [*Id*. at 2, 4.**]** The Illinois Appellate Court considered and rejected Bogan's arguments, and affirmed his conviction. Bogan petitioned for leave to appeal to the Illinois Supreme Court on the same basis, but his petition was denied. [Dkt 15-8, 15-9.] It is undisputed that Bogan has exhausted all state court remedies.[2]

***Standard of Review***

A writ of habeas corpus cannot be issued unless the petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may only grant habeas relief if the state court's decision on the merits "resulted in a decision that was

---

[2] Bogan also unsuccessfully brought a Section 1983 action challenging the reasonableness of the searches of the Cutlass and his apartment that resulted in his arrest, *Bogan v. German*, No. 14 CV 7849, 2017 WL 4339797 (N.D. Ill. Sept. 29, 2017), which is currently on appeal. [*See Bogan v. German*, 7th Cir. Case No. 18-2927.]

5

contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2). The standard under Section 2254(d) is "difficult to meet," and "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quotations omitted).

"A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "An 'unreasonable application' occurs when a state court identifies the correct legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of Petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation omitted).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). This "'highly deferential standard [] demands that state-court decisions be given the benefit of the doubt.'" *Cullen*, 563 U.S. at 181 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

# DISCUSSION

According to Bogan, there is insufficient evidence to support his convictions because the State failed to establish he possessed a defaced firearm. [Dkt 1.] Specifically, he says, the State could not have proven possession because the defaced gun was taken from a parked, locked vehicle for which no key was ever found, and he had testified at trial that Spencer had control of the vehicle's key on the day of his arrest. The State Court erred, he says, in concluding that the vehicle's registration in his name and evidence placing him in the vehicle at various times in the past was sufficient to establish constructive possession of either the vehicle or the subject gun. Without the vehicle's key, Bogan argues, he lacked the power to constructively possess the vehicle or the defaced handgun, and it conflicts with federal law and is unreasonable for any rational trier of fact to have concluded otherwise.[3] [Dkt 1, 17.]

Under Illinois law, a person commits the offense of being an armed habitual criminal "if he or she receives, sells, possesses, or transfers any firearm after having been convicted a total of 2 or more times of" certain enumerated offenses. 720 ILCS § 5/24-1.7(a) (West 2012). A person commits the offense of defacing the identification marks of a firearm if he "possesses any firearm upon which any such importer's or manufacturer's serial number has been changed, altered, removed or obliterated." 720 ILCS 5/24-5(b) (West 2012). Because the State presented no evidence that Bogan received, sold, or transferred a firearm, it was required to prove beyond a reasonable doubt that he possessed one.

---

[3] Bogan also argues that the State failed to establish his actual possession of the subject handgun. [Dkt 17.] The Illinois Appellate Court considered whether Bogan was guilty of constructive, rather than actual, possession. [Dkt 15-3 at 5.] In its decision, the Illinois Appellate Court observed that Bogan's pro se brief was "cogent and extremely well-argued." [Dkt 15-3 at 7.] This Court makes the same observation as to his submissions here.

This Court focuses on the state court of appeals decision as the last reasoned state court decision on the merits. *Wilson v. Sellers*, __ U.S. __, 138 S.Ct 1188, 1192 (2018). On appeal, the Illinois Appellate Court correctly identified and properly stated the standard of its review. [Dkt 15-3 at 5 (reviewing the evidence in the light most favorable to the prosecution and asking "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").] Accordingly, it decision in was not "contrary to" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Bell*, 535 U.S. at 694.

Because Bogan was not found in actual possession of the gun, the Court observed the State had to establish constructive possession by showing that Bogan had control over the Cutlass and that he knew that the defaced handgun was in the vehicle. [Dkt 15-3 at 5.] It then reviewed the State's evidence, including: (1) Bogan's ownership of the vehicle, (2) the presence of his insurance card and receipts with his signature, (3) his fingerprints on the box of ammunition found in the backseat floorboard, (4) the fact that the rifle found in the backseat matched the picture of a rifle found on Bogan's phone and dated 12 days before the search, (5) the fact that Bogan's insurance card and the box of ammunition bearing his fingerprint were found in a "stack of evidence" directly above and below the defaced handgun, and (6) the fact that a crossbow and target was found in the trunk, while a homemade target with apparent arrow holes was found in Bogan's apartment. [*Id*. at 6-9.] It considered and rejected Bogan's argument that he did not have a vehicle key. [*Id*. at 8 ("Insofar as the lack of a key militates against an inference of control, it certainly does not serve to fully negate the evidence presented by the State that does tend to demonstrate control.") It reviewed the trial court's finding of Bogan's regular, ongoing control of the Cutlass and inference of knowledge based on his numerous connections to the Cutlass and the precise

location of the evidence found within it, observing that his health insurance card and the ammunition box with his fingerprint were found directly above and below the subject .40 caliber handgun. [*Id.* at 9.] It concluded that the inference deriving from control of the vehicle combined with the inference arising from the sheer unlikelihood of Bogan's lack of knowledge of the item in the middle of a stack of items that were directly linked to him allowed the trial court properly to conclude beyond a reasonable doubt that Bogan had knowledge of the .40-caliber handgun. [*Id.*]

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which asks if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" governs Bogan's sufficiency of the evidence claim. Sufficiency of the evidence claims under *Jackson* "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). This is because on direct appeal, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Id*. (Internal quotations omitted). "[O]n habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable." *Id*.

According to Bogan, it was unreasonable for the state court to infer his control of the Cutlass and knowledge of the .40-caliber handgun because he was not observed in the vehicle, there was no evidence of his ability to exercise control over the gun because the key was never found on him or in his home, and he testified that another person, Spencer, had possession of it. He further argues that it was unreasonable to infer his knowledge of the .40-caliber handgun's presence in the Cutlass despite the evidence linking him to the vehicle because none of it

9

established he had been in the vehicle the day it was stopped, or showed his immediate, exclusive control of it.

As the Illinois Appellate Court observed, however, "[c]onstructive possession is frequently proven through circumstantial evidence," and knowledge of the presence of contraband can be inferred from control over the area where the contraband was found. [Dkt 15-3 at 5.] Here, the court found highly probative of control Bogan's ownership of the Cutlass, and the numerous pieces of evidence tying him to it: the receipts bearing his name, his health insurance card, his fingerprint on the box of ammunition, the rifle found in the backseat matching a photo on his phone, and the crossbow and arrows found in the trunk corresponding with the homemade target with apparent arrow holes found in his apartment. [*Id.* at 6.] It expressly considered and rejected Bogan's emphasis on his testimony that Spencer had the key to the Cutlass, reasoning that this merely militated against an inference of control, as opposed to negating the other evidence. [*Id*. at 8.]

When viewed in the light most favorable to the State, a rational factfinder could have easily inferred beyond a reasonable doubt from the evidence presented that Bogan had control over the vehicle and constructive possession of the gun. *See Jackson*, 435 U.S. at 319. Bogan thus cannot establish that the state court's application of the rule of *Jackson* falls "well outside the boundaries of permissible differences of opinion." *See Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (internal quotations omitted). Controlling Supreme Court precedent holds that habeas relief is not available if the evidence, when viewed in the light most favorable to the prosecution, would allow a "rational trier of fact . . . [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. at 319. Because the evidence presented at Bogan's trial readily satisfies this standard, the state court's rejection of his sufficiency of the evidence claim

was not "an unreasonable application of the clearly established law announced in *Jackson*. Accordingly, the petition is denied.

The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant has made a "substantial showing" where "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *See Resendez v. Knight*, 653 F.3d 445, 446-47 (7th Cir. 2011) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because Bogan has not made such a showing, the Court declines to issue a certificate of appealability.

Bogan is advised that this is a final decision ending his case in this Court. If Bogan wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Bogan need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Bogan wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the

deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

## CONCLUSION

For all of the reasons discussed above, Bogan's habeas corpus petition [1] is denied on the merits. The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner. The Court declines to issue a certificate of appealability. Any pending motions are terminated as moot.

Date: 1/14/2019

Jorge L. Alonso
United States District Judge